**CHERRYWOOD APARTMENTS, Inc., et al.
v. UNITED STATES.**

No. 50052.

United States Court of Claims.

July 9, 1951.

Carl L. Shipley, Washington, D. C., for the plaintiff.

Floyd L. France, Washington, D. C., A. Devitt Vanech, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The Government has demurred to the plaintiffs' petition. We summarize the allegations of the petition for the purpose of ruling upon the demurrer.

The plaintiffs are Virginia corporations engaged in constructing, operating and selling residential properties in or near Front Royal, Virginia. In 1944 and 1945 the Government constructed two war housing apartment projects, containing 232 dwelling units, in Front Royal. These apartments were built under the authority of the Lanham Act, 54 Stat. 1125 as amended, 42 U.S. C.A. § 1521 et seq., which authorized the Government to construct such housing if the President found that in a particular

area an acute shortage of housing existed or impended which would impede the national defense, and that private capital would not supply the needed construction. In the years 1947 to 1949 the plaintiffs constructed apartment houses in the area. They allege that they did so in reliance upon an implied undertaking by the Government not to compete with private housing, but that the Government, though privately owned housing is now available, has continued to rent its apartments for twenty-nine dollars a month, as a result of which competition the plaintiffs have incurred substantial losses of rents and profits, and of expenses incurred by them. They allege that their property has, therefore, been taken without just compensation.

The plaintiffs, in support of their contention that the Government impliedly promised not to keep its war housing apartments available for rent when there was enough private housing to fill the demand, points to several facts. Section 4 of the Lanham Act, inserted by amendment in 1942, 56 Stat. 11, 12, declares the policy of the Act to be "to further the national defense by providing housing in those areas where it cannot otherwise be provided by private enterprise when needed, and that such housing may be sold and disposed of as expeditiously as possible: * * *." The Act of July 7, 1943, 57 Stat. 387, 388, Section 4, which was made Section 313 of the Lanham Act, and, after further amendment in 1948, 62 Stat. 1064, in 1949, 63 Stat. 906, and 1950, 64 Stat. 72, 73, appears as 42 U.S.C.A. § 1553 provides that: "Except as otherwise provided in subchapters II–VII of this chapter, the Administrator shall, as promptly as may be practicable and in the public interest, remove (by demolition or otherwise) all housing under his jurisdiction which is of a temporary character, as determined by him, * * *. Such removal shall, in any event, be accomplished not later than December 31, 1952 or by such later date as may be required because of extensions of time in accordance with section 1584 of this title, * * *."

On December 14, 1946, the President issued a proclamation, the text of which the plaintiff has not furnished us, having as its purpose the encouragement of private enterprise to provide housing. In 1947 and 1948 the Government, pursuant to the Act of March 28, 1941, 55 Stat. 55, 12 U.S.C.A. § 1736, insured large mortgages on the plaintiffs' properties on condition that they build housing of a certain type and class approved by the Government.

The facts on which the plaintiffs rely do indicate that some of the Government's activities in regard to housing are hard to fit into a logical pattern. But we think that no promise can be spelled out of them, on the part of the Government, that as soon as privately financed housing caught up with the demand, Government war housing would be shut down. The command of the statute, which we have quoted above, was that such housing, if of a temporary character, as determined by the Administrator, should be removed from the market as promptly as practicable and in the public interest, and that such removal should, in any event, be accomplished not later than December 31, 1952. The fact that this final date was, in a succession of Congressional enactments, progressively postponed, seems to us to show that Congress meant to keep the control of this troublesome question in the hands of the Administrator, subject only to the final termination date written by it into the statute. The question whether the removal of the war housing from the market would be, as the statute specifies, "practicable and in the public interest" is a question peculiarly unsuitable for litigation, as witness the continuing contest between the proponents and opponents of public housing programs.

We conclude, therefore, that the various expressions of Congress were what they purported to be, acts of legislation, and not statements implying promises that governmentally constructed housing would not be permitted to compete, even temporarily, with private housing to the prejudice of the latter. And we conclude that the President's statement, of which we are not furnished the text, was not intended to imply such a promise, and did not have the legal effect of doing so.

Since we are of the opinion that the plaintiffs' petition does not state a cause of action, we do not discuss the defendant's plea to the jurisdiction, nor its motion for severance.

The defendant's demurrer is sustained.

It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER, and LITTLETON, Judges, concur.